IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JAMES L. SNODGRASS,

               Petitioner,

     v.

ROBERT LAMPERT,

               Respondent.

Case No. 3:07-cv-06254-AC

FINDINGS AND RECOMMENDATION

C. RENEE MANES
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

       Attorney for Petitioner

JOHN R. KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

       Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On February 7, 1996, a Polk County grand jury indicted Petitioner on two counts of Sodomy in the First Degree, two counts of Unlawful Sexual Penetration in the First Degree, two counts of Attempted Rape in the First Degree, and four counts of Sexual Abuse in the First Degree. A separate indictment was entered on two additional counts of Rape in the First Degree. Throughout the charges, the victim was described as incapable of consent by reason of mental defect.

Petitioner was the branch manager of the Lebanon Senior and Disabled Services Division of the Department of Human Services. The victim was a client of the office. The victim suffered from Dissociative Identity Disorder ("DID"), which is also sometimes referred to as multiple personality disorder.[1] Petitioner was not the victim's caseworker, but he was familiar with her case and met with her at least three times.

---

[1]A person who suffers from DID will split themselves into different pieces or personalities, known as "alters," to separate themselves from abuse or trauma. These other personalities are specific, well established identities that are unique and usually serve a psychological purpose in that person's life. A person will tend to adopt different personalities in order to cope with different situations. Re-enactment of prior trauma, an article of clothing, or the stress of everyday living can cause an individual to dissociate. When a person dissociates, that person can dissociate to different identities with different ages.

2 - FINDINGS AND RECOMMENDATION -

On January 3, 1996, after learning the victim had lost her housing, Petitioner invited her to live in a camper shell that was on his property. The victim accepted, and in exchange agreed to care for and feed Petitioner's animals.

On the second or third night at the property, the victim hurt her knee. After that, Petitioner began to invite her into his house in the evening where they would share a meal and watch TV. The victim experienced various triggers in Petitioner's house that would cause her dissociative identity disorder to become active and cause her "alters" to appear. According to the victim, she would dissociate during the evening news broadcast because she did not like the trauma, but would remain present because other shows came on after the news that she liked to watch.

On the evening of January 8, 1996, Petitioner and the victim ate dinner together and watched the news. After dinner was over, Petitioner put his arm around the victim and tried to kiss her. He rolled on top of her and grabbed her hands and placed them above her head. This brought out one of the victim's child "alters" who had been tied up and sexually abused as a young child. Petitioner started to remove the victim's clothes; he took off her shirt and kissed her breasts. He forced the victim to engage in oral sodomy and sexual abuse. Petitioner then moved the victim to the bedroom where he forced sexual penetration, attempted rape, and sexual abuse.

After the sexual contact, one of the victim's adult alters took over, and she told Petitioner he had raped her. Defendant told her that he did not rape anyone and that they were having a good time. The victim went to her trailer and took cold medication to go to sleep. When she woke up the next morning, she drove herself to the hospital and reported the rape.

Petitioner's case was tried to a jury. The jury found Petitioner guilty on all charges.[2] The trial judge imposed concurrent and consecutive sentences for a total of 175 months of imprisonment.

Petitioner filed a direct appeal, asserting three assignments of error: (1) the trial court erred in permitting the state to question the victim about Petitioner's past conviction for child abuse; (2) the trial court erred in permitting the state to introduce Petitioner's prior judgment of conviction for sexual abuse in the first degree; and (3) the trial court erred in imposing sentence under Measure 11. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *State v. Snodgrass*, 169 Or. App. 653, 10 P.3d 336 (2001), *rev. denied*, 331 Or. 584, 19 P.3d 356 (2001).

Petitioner then sought state post-conviction relief ("PCR"). In his formal PCR Petition, he alleged trial counsel provided constitutionally ineffective assistance of counsel in six respects: (1) trial counsel failed to call a medical expert to counter evidence regarding the victim's condition; (2) trial counsel failed to call other witnesses suggested by Petitioner; (3) trial counsel failed to seek suppression of a statement made by Petitioner to police while he was suffering the effects of a concussion; (4) trial counsel failed to object to consecutive sentences for an offense that was one continuous uninterrupted course of conduct; (5) trial counsel failed to object to the imposition of a Measure 11 sentence as unconstitutional; and (6) trial counsel failed to object to the state's introduction of prior bad acts by Petitioner.

---

[2]As noted, Petitioner was charged in a separate indictment on two counts of Rape in the First Degree, which were tried with the charges at issue here. The jury acquitted Petitioner on both counts.

Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, Petitioner's counsel asserted one assignment of error: that the PCR court erred in ruling that Petitioner's claims of denial of counsel for failure to object to consecutive sentences lacked merit. Petitioner submitted a "Supplemental *Pro Se* Brief" in which he alleged claims of ineffective assistance of counsel, sentencing error, and trial errors. In a written opinion addressing only the assignment of error raised by Petitioner's counsel, the Oregon Court of Appeals affirmed the PCR trial court decision. *Snodgrass v. Lampert*, 210 Or. App. 390, 150 P.3d 1109 (2007). Petitioner filed a *pro se* Petition for Reconsideration, which the Oregon Court of Appeals denied. Resp. Exh. 128. Petitioner sought review from the Oregon Supreme Court, which was denied. *Snodgrass v. Lampert*, 342 Or. 633, 157 P.3d 788 (2007).

On September 15, 2003, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus. After briefing by the parties, the court dismissed the petition on the grounds that state remedies had not yet been exhausted. The dismissal was without prejudice, and the court's appointment of the Federal Public Defender to represent Petitioner was extended for monitoring of the progress of the state proceedings and to assist with the filing of a new petition after the termination of those proceedings. On September 10, 2007, appointed counsel filed a new Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 on Petitioner's behalf. The Petition alleges six grounds for relief:

> **First Claim for Relief:** Insufficient evidence and actual innocence.
>
> **Supporting Facts**: There was insufficient evidence to convict him of any of the crimes charged, and he is actually innocent of those charges. A petitioner is entitled to relief from any conviction if he demonstrates that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v.*

*Carrier*, 477 U.S. 478,496 (1986).  Actual innocence is established if, in light of all the evidence, including evidence not introduced at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The facts currently known in support of this claim include:

> A.  The testimony of the alleged victim in this matter was so rife with inconsistencies and inaccuracies that it provided constitutionally insufficient evidence on which to base a conviction.

> B.  [Petitioner] is actually innocent of these charges.  [Petitioner] contends and believes, and on that basis alleges, that the alleged victim falsely accused [Petitioner] of sexual misconduct in order to reap a benefit.  In support of this claim, [Petitioner] proffers that a mutual friend, Jess Miller, observed the interactions between himself and [the victim] on numerous occasions, including immediately before and after the challenged sexual contact in January of 1996.  On information and belief, Mr. Miller spoke with an investigator for the trial case and stated that he never saw [the victim] exhibiting any other personalities.  He did notice, however, that she was inordinately physical with [Petitioner], constantly caressing him and inappropriately fondling him.  Mr. Miller took [Petitioner] aside at one point and warned him that he believed [the victim] was out to "catch him."  He felt that she was trying to have an affair with him in order to get something out of him.  This information, although available, was not presented to the jury.  A second witness for the defense, John Jones, heard from [the victim] that she was living with a government worker, and that she had coerced him into doing something.  He explained, "She didn't say what, but she implied that she had slept with him and that she was going to sue him."  In addition, he recalled that "she said, it was difficult to pull it all off, but she was amazed it worked so well."  The jury did not hear enough evidence to assess the alleged victim's claims.

> C. As [Petitioner] always acknowledged that consensual sexual contact had occurred, the only issues in this case were whether the alleged victim, an adult female, had and could have consented to the contact.  The report of Polk County Sheriffs Officer John Wallace supports [Petitioner's] version of events.  On the issue of whether [Petitioner] could believe the contact was consensual, the officer wrote: "The information provided by the alleged victim . . . all indicates that there was no indication to [Petitioner] that anything that was happening was not wanted."  On the issue of whether the alleged victim was capable of consenting, the officer wrote: "During my

interview with [the victim] she appeared to me to be rational and able to distinguish reality from fiction." Petitioner contends that there is additional available evidence in support of this claim, and requests the right to present such evidence at a hearing after appropriate investigation and discovery. As described infra, [Petitioner's] trial attorney failed to fully investigate or competently present evidence from these witnesses, resulting in an incomplete and inaccurate picture being presented to the jury. Petitioner contends that these violations constitute structural error in his trial, requiring relief from his conviction and sentence without any assessment of prejudice. In the event prejudice is required, Petitioner contends that these errors substantially affected or influenced his conviction and, therefore, require a grant of relief.

**Second Claim for Relief**:   Trial while unable to testify.

**Supporting Facts:** [Petitioner's] conviction and sentence are void because he was required to stand trial while he was unable to testify in his own defense.  On information and belief, [Petitioner] was injured in a car accident during the period before his trial.  As a result, he developed temporary expressive aphasia and a speech impediment, which rendered him unable to articulately speak.  The trial of an incompetent person violates an individual's rights to due process, a fair trial, to present a defense, to compulsory process, to confrontation, to counsel, and to a reliable, non-arbitrary determination of guilt and penalty, and is structural error that invalidates the integrity of the entire trial proceedings. *See, e.g., Whitmore v. Arkansas*, 409 U.S. 149, 153-154 (1990); *Demosthenes v. Baal*, 495 U.S. 731 (1990).  This violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**Third Claim for Relief:** Violations of the confrontation clause.

**Supporting Facts:** [Petitioner's] conviction was obtained in violation of his rights to confront the evidence against him and to present a defense, as guaranteed by the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.  The facts currently known in support of this claim include:

A.  [Petitioner] was deprived of the right to confront the evidence against him and present a defense because the alleged victim changed her story numerous times,   including while testifying, making it impossible for Petitioner to prepare to rebut her numerous allegations and reallegations.

B. [Petitioner] was deprived of the right to confront the evidence against him and present a defense because the alleged victim claimed that she suffered from multiple personalities, and without knowing which personality would appear in court, [Petitioner] could not prepare his cross-examination.

**Fourth Claim for Relief:** Deprivation of the right to a fundamentally fair trial and sentencing proceeding.

**Supporting Facts:** [Petitioner] was deprived of his right to a fundamentally fair trial, as guaranteed by the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The facts currently known in support of this claim include:

A. The deprivations of [Petitioner's] rights to confront the evidence and present a defense as set forth supra, which are incorporated herein by reference, rendered [Petitioner's] trial fundamentally unfair.

B. The trial court erred in allowing the jury to hear evidence of defendant's prior bad acts, which prejudiced the defendant and rendered the trial fundamentally unfair in violation of Due Process. *See McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993). The impermissible evidence was presented at trial when the state was permitted to question the alleged victim about the defendant's past conviction for sexual abuse, and again when the state was permitted to enter the defendant's judgment of conviction for the past case.

C. The trial court erred in allowing trial to proceed with a tainted jury panel. On information and belief, this occurred after one juror polluted the panel before being excused. The Court should have conducted additional just voir dire to avoid the violation of [Petitioner's] right to due process.

D. The trial court erred in accepting non-unanimous jury verdicts (11-1 and 10-2) on two counts, in violation of the defendant's rights under the Sixth Amendment, as incorporated under the Fourteenth Amendment. *Compare Apodaca v. Oregon*, 406 U.S. 404 (1972) (plurality opinion) (permitting non-unanimous juries) with *Blakely v. Washington*, 124 S.Ct. 2531, 2536 (2004) (quoting BLACKSTONE: "the 'truth of every accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours.'").

E.  The trial court erred in excluding, as hearsay, the proffered witness testimony of Jess Miller.  As described supra, witness Miller had crucial exculpatory information to provide to the jury.

F.  The sentencing court erred by imposing multiple maximum sentences for a crime that covered a single span of time.  The state's failure to follow its own rules at sentencing violated due process.  *Estelle v. McGuire*, 502 U.S. 62 (1991).  In addition, the factfinding by the sentencing court in support of consecutive sentencing violated defendant's right to have a jury find facts beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments.  *Blakely v. Washington*, 542 U.S. 296 (2004).

G.  The sentencing court erred in sentencing defendant for two inchoate attempt crimes, when Oregon law expressly forbids two such sentences. The state's failure to follow its own rules at sentencing violated due process. *Estelle v. McGuire*, 502 U.S. 62 (1991).

**Fifth Claim for Relief:**  Ineffective assistance of trial counsel.

**Supporting Facts:**  Petitioner had the right to the effective assistance of counsel at his trial, a right guaranteed to him by the Sixth Amendment to the United States Constitution, made applicable to the State of Oregon by the Fourteenth Amendment to the United States Constitution.  Petitioner's trial counsel failed to render effective assistance for reasons including, but not limited to:

A.  Counsel failed to properly prepare for trial, both by failing to conduct a sufficient investigation to present a defense at the time of trial, and by failing to obtain and review material that was available through discovery. Such failures include the failure to investigate critical witnesses, including the alleged victim, and the individuals who had observed her behavior.  As identified in petitioner's postconviction petition, counsel failed to call as witnesses Dr. Pati, Joan Haller, Randy Blair, and Joy Raymond, whose testimony would have been material. In addition, attached as Exhibit I is a list of additional witnesses whom trial counsel failed to call, and the absence of whom prejudiced the petitioner.

B.  Trial counsel failed to protect Petitioner's rights to stand trial while competent and able to speak, as argued supra and incorporated herein by reference, and as a result, Petitioner was forced to stand trial while he was unable to properly articulate or speak in assistance of his own defense.

C.  Trial counsel failed to advise Petitioner properly on the likely outcome of a trial and the advisability of the plea offer for 75 months that had been extended by the state.  *See Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996).

D.  Trial counsel failed to protect Petitioner's right to confront the evidence against him, as discussed supra, and incorporated herein by this reference.

E.  Trial counsel failed to protect Petitioner's rights to Due Process and to a fundamentally fair trial, as discussed supra, and incorporated herein by this reference.

F.  Trial counsel failed to adequately cross-examine the alleged victim about her allegations, including on: her numerous inconsistent statements; her claim to having multiple personalities; and the fact that she had invented the charges in order to file a civil suit and receive monetary compensation.

G.  Trial counsel failed to properly object when petitioner's rights were violated by the admission of prior bad act evidence.

H.  Trial counsel failed to object to the use of unconstitutional sentencing procedures, as discussed supra, and incorporated herein by this reference.

**Sixth Claim for Relief:**  Ineffective assistance of appellate counsel.

**Supporting Facts:**   Petitioner was deprived of due process and received constitutionally ineffective assistance of counsel on his direct appeal, in violation of the rights guaranteed to him by the Fifth and Sixth Amendments to the United States Constitution, made applicable to the State of Oregon by the Fourteenth Amendment to the United States Constitution.   Petitioner's appellate counsel rendered constitutionally ineffective assistance for reasons including, without limitation:

A.  Appellate counsel failed to keep Petitioner informed about the status of his appeal, or to allow access to Petitioner's file.

B.  Appellate counsel failed to adequately consult with Petitioner on the issues Petitioner wanted raised in the appeal, or give Petitioner an opportunity to brief additional issues on his own.

C.  Appellate counsel failed to appropriately raise and preserve numerous claims and errors occurring at his trial, all of which were apparent on the record of the trial.  Such errors include without limitation:

10 - FINDINGS AND RECOMMENDATION -

I.  Appellate counsel failed to raise a challenge to the conviction on the basis that there was constitutionally insufficient evidence to support that conviction.

ii.  Appellate counsel failed to raise all available Confrontation Clause violations apparent on the face of the record, including those summarized supra.

iii.  Appellate counsel failed to raise challenges to the use of an unconstitutional sentencing enhancement procedure, as discussed supra, and incorporated herein by this reference.

iv.  Appellate counsel failed to raise most of the trial court errors identified above and incorporated herein by reference. Specifically, although the trial court's evidentiary error in excluding the witness testimony of Jess Miller was apparent on the face of the record, appellate counsel failed to raise it.

Respondent argues Petitioner procedurally defaulted all of the claims alleged in the Petition except two:  (1) the trial court erred in allowing the jury to hear evidence of Petitioner's prior bad acts; and (2) trial counsel provided constitutionally ineffective assistance of counsel when he failed to object to the use of unconstitutional sentencing proceedings. Petitioner asserts that all remaining claims were fully exhausted and asserts he is entitled to relief on the merits on several of the claims.

## DISCUSSION

I.    **Procedural Default**

A.    **Legal Standards**

Generally, before a federal court may consider granting habeas corpus relief, a state prisoner must have exhausted all available state court remedies either on direct appeal or through collateral proceedings. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate

state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005). In Oregon, the Oregon Supreme Court is the highest state court with jurisdiction to hear claims in satisfaction of the exhaustion requirement. *See* Or. Rev. Stat. § 138.650 (2005); *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003).

A federal claim is "fairly presented" to the state courts if it was presented "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted). For post-conviction relief, claims must be raised in the petition or amended petition or they are considered waived. *See Bowen v. Johnson*, 166 Or. App. 89, 93, 999 P.2d 1159, *rev. denied*, 330 Or. 553, 10 P.3d 943 (2000). Under limited circumstances, the Oregon Supreme Court has considered federal claims fairly presented when the petitioner specifically cross-referenced claims in the assignment of error and attached a lower court brief arguing the federal claims. *Farmer v. Baldwin*, 346 Or. 67, 79–81, 205 P.3d 871 (2009).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750.

**B.**     **Analysis**

    **1.**     **Insufficient Evidence and/or "Actual Innocence"**

In his First Claim for Relief, Petitioner alleges there was insufficient evidence to convict him of any of the crimes charged, and he is actually innocent of those charges.  To the extent this claim alleges insufficient evidence, Petitioner procedurally defaulted the claim by failing to raise it in his direct appeal.  *See Coleman*, 501 U.S. at 735 (petitioner has procedurally defaulted when he has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would not find the claims procedurally barred"); *see also* Or. Rev. Stat. § 138.071 (requiring that direct appeals be filed no later than 30 days after the judgment or order appealed from was entered in the register).

To the extent Petitioner is asserting a free-standing actual innocence claim, Petitioner's argument that he exhausted the claim by including it in his *pro se* filing to the Oregon Court of Appeals is without merit, as the claim was never presented to the PCR trial court.  Because Petitioner did not present the claim at the PCR trial level, it could not properly be raised on appeal. *See Bowen*, 166 Or. App. at 93 (relief under state PCR law only available as to claims actually raised in the petition or amended petition, and any claim not so raised is waived unless the claim could not reasonably have been asserted at the time).

Petitioner further argues he was excused from exhausting this claim because actual innocence does not provide any basis for relief from a conviction or sentence under Oregon law. Assuming without deciding that this may be the case, Petitioner's actual innocence claim fails in any event.

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court addressed the process by which state prisoners may prove "actual innocence" so as to excuse a procedural default. The Court explained that in order to be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324; *Downs v. Hoyt*, 232 F.3d 1031, 1040 (9th Cir. 2000), *cert. denied*, 523 U.S. 999 (2001). The Ninth Circuit has held that "habeas petitioners may pass *Schlup*'s test by offering 'newly presented' evidence of innocence." *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003), *cert. denied*, 541 U.S. 998 (2004). The meaning of "newly presented" evidence is evidence that was not before the trial court. *Id*.

Ultimately, a petitioner asserting actual innocence as an excuse for procedural default must prove that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327; *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Downs*, 232 F.3d at 1040. In making this determination, this court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 332.

In this case, Petitioner has not shown that no reasonable juror would have voted to convict him after hearing the evidence he recites in this habeas proceeding. Here, the new evidence is virtually all in the form of impeachment evidence against the victim's character; Petitioner presents no new evidence of direct information regarding the crime. While a petitioner may pass through the *Schlup* gateway by promulgating evidence that significantly undermines or impeaches the

credibility of witnesses presented as trial, the impeachment evidence must be sufficiently substantial to make it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. *Ganderela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002), *cert. denied,* 537 U.S. 1117 (2003).   Here, Petitioner has not done so.

Even assuming Petitioner's freestanding claim of innocence pursuant to *Herrera v. Collins*, 506 U.S. 390, 417 (1993), had been properly preserved, and further assuming such a claim is cognizable in a non-capital habeas corpus case, *Herrera* claims require a greater showing of innocence than *Schlup* gateway claims. *House v. Bell*, 547 U.S. 518, 556 (2006).   Because Petitioner cannot make a gateway showing, he is unable to succeed on his *Herrera* claim.

### 2.      Inability to Testify at Trial

In his Second Claim for Relief, Petitioner alleges his conviction and sentence are void because he was required to stand trial while he was unable to testify because he suffered from temporary expressive aphasia and a speech impediment.  Petitioner argues he did not procedurally default this claim because it was raised in his *pro se* filing with the Oregon Court of Appeals in the state PCR proceeding.  Petitioner did not, however, present this claim in his formal PCR petition. Accordingly, Petitioner procedurally defaulted the claim alleged in the Second Claim for Relief and is not entitled to federal habeas corpus relief.

### 3.      Trial and Sentencing Error Claims

On direct appeal, Petitioner argued the trial judge committed error in three respects:  (1) by permitting the state to question the victim about her knowledge regarding Petitioner's prior conviction for sexual abuse; (2) by permitting the state to introduce a certified copy of the Judgment

of Conviction for Petitioner's prior conviction; and (3) by denying Petitioner's challenges to the imposition of a Ballot Measure 11 sentence and Petitioner's motion for a guidelines sentence.

With respect to the first two errors, Petitioner's arguments on appeal were based solely on state law; Petitioner did not fairly present any federal claim relating to the court's admission of the victim's testimony and the copy of the prior Judgment of Conviction. However, because Respondent did not assert a procedural default defense against these claims, the Court finds Respondent waived the defense and addresses them on the merits below. *See* 28 U.S.C. § 2254(b)(3) ("[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement"), *but see Cone v. Bell*, 129 S. Ct. 1769, 1791 n.6 (2009) (unlike exhaustion, procedural default may be waived if not raised as a defense).

With respect to sentencing, in his Petition for Writ of Habeas Corpus Petitioner alleges the trial court erred in imposing multiple maximum sentences for a crime that covered a single span of time, that the factual finding by the trial judge to support imposition of consecutive sentences violated *Blakely v. Washington*, 542 U.S. 296 (2004), and that the sentencing court erred in sentencing Petitioner for two inchoate attempt crimes, in violation of Oregon law. These are not the same as the sentencing issue raised on direct appeal.

Finally, none of the remaining trial error claims alleged in Petitioner's Fourth Claim for Relief were raised on direct appeal. Accordingly, Petitioner procedurally defaulted them and is not entitled to habeas corpus relief.

### 4.    Ineffective Assistance of Trial Counsel Claims

Petitioner alleges numerous claims of ineffective assistance of trial counsel in his Petition for Writ of Habeas Corpus. Only two of the claims, however, were alleged in the Formal Petition for State Post-Conviction Relief: (1) ineffective assistance of counsel for failure to call witnesses; and (2) ineffective assistance of counsel for failure to object to imposition of consecutive sentences. Some of the remaining claims were raised in Petitioner's *pro se* supplemental brief in the PCR appellate proceeding but, as noted, those claims were not "fairly presented" because they were never presented to the PCR trial court. Accordingly, with the exception of the two claims noted, all of Petitioner's other ineffective assistance of trial counsel claims are procedurally defaulted.

### 5.    Ineffective Assistance of Appellate Counsel Claims

Petitioner also alleges numerous claims of ineffective assistance of appellate counsel in his Petition for Writ of Habeas Corpus. No such claims were alleged, however, in the Formal Petition for State Post-Conviction Relief. Again, Petitioner's attempt to raise those claims in the PCR appellate proceeding did not suffice to fairly present them. As such, Petitioner procedurally defaulted all of the ineffective assistance of appellate counsel claims.

## II.    Relief on the Merits

### A.    Legal Standards

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386–389 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1402 (2011), the Court reiterated the highly deferential nature of federal habeas review, and limited federal review "to the record that was before the state court that adjudicated the claim on the merits."

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 546 U.S. 963 (2005). An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing Williams). "The state court's application of law must be objectively unreasonable." *Williams*, 529 U.S. at 411 (emphasis added). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations omitted).

"[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Pinholster*, 131 S. Ct. at 1402 (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**B.     Analysis**

    **1.     Trial Error - Admission of Prior Bad Acts**

Petitioner alleges the trial court erred in allowing the jury to hear evidence of the Petitioner's prior bad acts through the victim's testimony and permitting the prosecution to enter a certified copy of the Judgment from Petitioner's prior sexual abuse conviction.  The issue was raised on direct appeal but, as noted, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.

"A state court's . . . evidentiary ruling is not subject to federal habeas corpus review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355,  (9th Cir. 1995); *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  "Thus, a federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *Walters*, 43 F.3d at 1355; *Jammal*, 926 F.3d at 919-20.  Moreover, the Supreme Court has explicitly held that a state practice of permitting a jury to hear evidence of prior crimes does not violate the Due Process Clause, at least where the trial judge gives a limiting instruction. *Fritchie v. McCarthy*, 664 F.2d 208, 212 n. 1 (9th Cir. 1981) (citing *Spencer v. Texas*, 385 U.S. 554, 461 (1967)).

Here, during cross examination of the victim, Petitioner's trial attorney attempted to portray the victim's motives in filing a civil claim against Petitioner and his former employer, the State of Oregon, as "false" claims driven by the desire for financial claim. The defense asserted the victim concocted a "scam" to make false allegations against Petitioner to obtain money from the State and Petitioner. To support this theory, trial counsel introduced into evidence the civil complaint the victim had filed against the State of Oregon and Petitioner.

To rebut the defense theory, the prosecution sought testimony regarding Petitioner's prior conviction for sexual abuse. Overruling Petitioner's objection to the evidence, the trial judge explained:

> THE COURT: You seek to impeach this witness's credibility by showing bias by the fact that she's filed a lawsuit against this defendant and against the State of Oregon and asks for $250,000. It appears that her theory in asking for $250,000 from the State of Oregon is that the State of Oregon knew or should have known that [Petitioner] had previously engaged in a sexually inappropriate manner with women, including women similarly situated to the plaintiff and that he posed a danger to women such as the plaintiff. That's what the complaint says.
>
> I think the State's entitled to establish that they have -- there is a basis for those allegations. Not simply that she wants to get a whole bunch of money for nothing, which is the bias inference. But, in fact, that there is a basis for that.

Transcript, p. 320.

Petitioner's trial attorney continued his objection, asserting that the evidence should not be allowed under Or. R. Evid. 404(3) because it would be evidence of other crimes, wrongs or acts not admissible to prove the character of a person in order to show the person acted in conformity therewith. The trial judge rejected this argument as follows:

THE COURT: Ordinarily, you likely would be correct. However, you have, as we say, opened the door by raising the issue of the bias of this witness based on the inference that she's initiated these civil proceedings to -- for monetary gain. And she touched on it in her response to some of your questions about what the State did was inappropriate. And I think she's entitled to amplify on what it was that the State did that she feels is inappropriate. And if that is that they failed to discover -- or after discovering failed to do anything about the fact that this man had a conviction for sexual abuse and in her opinion made him -- in her opinion made him dangerous to her, she's entitled to show that for the grounds for initiating this lawsuit.

Transcript, p. 321.

Although the trial court allowed the evidence of Petitioner's prior conviction, the judge took great pains to instruct the jury on appropriate use of the evidence, and limited their consideration of the conviction to rehabilitating the victim's credibility after it was impeached by the theory of financial bias or interest. At the time the evidence was introduced, the judge instructed the jury:

THE COURT: Ladies and gentlemen. I have a caution that I want to -- a cautionary instruction that I need to give you right now. I would caution you that you just heard evidence concerning a prior conviction of [Petitioner] for sexual abuse, as well as allegations of other sexually inappropriate acts by [Petitioner] -- that [Petitioner] is alleged to have committed.

These are to be considered by you only upon the issue of the allegations of the civil complaint filed by [the victim] against [Petitioner] and the State of Oregon seeking money damages. And that evidence may bear on the credibility of [the victim's] testimony. That's the reason that the civil complaint is relevant to this case in the first place is it tends to show what we call either potentially biased motive or interests of the witness. So it was allowed for that purpose.

The allegations of the complaint and her knowledge specifically including the prior conviction are only material then to that issue. That is the credibility of this witness's testimony.

Specifically, you may not use this evidence for the purpose of drawing the inference that because the defendant may have been convicted of a previous crime, that the defendant may be guilty of one or more of the crimes charged in this case. So specifically this evidence is for only one purpose and specifically cannot be used for the purpose that I just said was inappropriate.

Transcript, pp. 344-45.

When the prosecution subsequently offered into evidence a certified copy of the judgment

from Petitioner's prior conviction, the trial judge instructed the jury:

> THE COURT: All right. Ladies and gentlemen, the State has offered and the Court
> has ordered the receiving of Exhibit 67, which is a three-page document, certified
> copy of a document entitled State of Oregon versus [Petitioner], that indicates a
> February 18th, 1982 conviction for sexual abuse in the first degree.
> I will again caution you that this exhibit is being received only for the same
> purpose as I earlier explained, the line of questioning of the last witness concerning
> the complaint and the allegations of prior inappropriate conduct by [Petitioner].
> And you are to only consider Exhibit 67 for that same purpose.
> And, again, specifically I will instruct you that you are not to use -- if you
> find that [Petitioner] has been previously convicted of a crime, you may not use this
> as any evidence for the purpose of drawing the inference that because the defendant
> may have been convicted of a previous crime, that the defendant may be guilty of
> one or more of the crimes charged in this case.
> So the exhibit is being received, but, again, only for a limited purpose. And
> that is in regard to the issue of bias, motive or reasons for the filing of the civil
> complaint that was earlier testified to.

Transcript, pp. 353-54.

Finally, at the close of evidence the trial judge instructed the jury:

> THE COURT: If you find that the defendant has been previously convicted of a
> crime, I will remind you that this evidence was allowed only in regard to the issue
> of the allegations of the civil complaint set forth in Exhibit 101 in which [the
> victim] is the plaintiff and in which she seeks money damages from [Petitioner] and
> the State of Oregon, who are the parties defendant in that lawsuit, as that evidence
> may bear upon the credibility of [the victim's] testimony, specifically as to any bias,
> motives or interests she may have in this case.
> I will again caution you specifically that you may not use this evidence for
> the purpose of drawing the inference that because the defendant was convicted of
> a previous crime, that the defendant may be guilty of one or more of the crimes
> charged in this case.

Transcript, pp. 675-76.

Petitioner has not presented any evidence that the jurors were not able to follow the trial judge's limiting instructions. In light of the extensive limiting instructions and of the purpose for which the evidence was admitted, the admission of evidence of Petitioner's prior conviction was neither arbitrary nor so prejudicial that it rendered the trial fundamentally unfair. Accordingly, the state court decisions allowing the evidence were reasonable and are entitled to deference in this Court.

### 2. Ineffective Assistance of Counsel

Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel by failing to call witnesses and by failing to object to the sentence imposed. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 790 (citations omitted).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" *United States v. Palomba*, 31 F.3d 1456, 1460–61 (9th Cir. 1994) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)).

### a.    Failure to Call Witnesses

Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel by failing to call as witnesses Dr. Pati, Joan Haller, Randy Blair, and Joy Raymond. In his Brief in Support of Petition, however, Petitioner addresses only witness Joy Raymond, and that in support of his claim of actual innocence. Petitioner offers no further argument as to counsel's alleged failure.

The court has nevertheless reviewed Petitioner's unargued claim on the existing record and determined that he is not entitled to relief. *See* 28 U.S.C. § 2248 ("[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). The PCR trial judge specifically addressed Petitioner's allegation and found the following:

> THE COURT: As for the failing to call witnesses, Joy Raymond, Joan Heller, and Randi Blair, I do not find that not calling any of those witnesses or all of them constitutes a demonstration of the inadequacy of trial counsel.

Resp. Exh. 121, p. 22. The PCR trial judge concluded Petitioner had not established he was entitled to relief on this ineffective assistance of counsel claim. Resp. Exh. 122, p. 2. This conclusion was not contrary to or an unreasonable application of clearly established law and Petitioner is not entitled to habeas corpus relief on this claim.

### b.      Failure to Object to Sentence

Finally, Petitioner alleges trial counsel provided constitutionally ineffective assistance of counsel by failing to object to the imposition of consecutive sentences. Again, Petitioner did not address relief on the merits on this claim in his Brief in Support of Petition. Upon an independent review of the record, the Court finds Petitioner is not entitled to relief.

The state PCR trial judge specifically rejected this claim as well:

> THE COURT: Insofar as the consecutive sentences are concerned, I find that the record supports the [state's] argument, which is found on page 12 of the [state's] trial memorandum that, "This is not an uninterrupted course of conduct that would have substantiated an objection to consecutive sentences." And I further find that that claim of inadequate counsel or insufficient counsel under either the State or Federal Constitution lacks merit, and should be denied.

Resp. Exh. 121, pp. 22-23. Based on the record, this decision was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas corpus relief.

### RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED, and a judgment of dismissal should be entered.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due December 7, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 22nd day of November, 2011.

John V. Acosta
United States Magistrate Judge

26 - FINDINGS AND RECOMMENDATION -     F:\Share\Acosta\07-6254snodgrass1122f&r.wpd